UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

FREDERICK BAKER,

    Plaintiff,

v.

FERRIS STATE UNIVERSITY,

    Defendant.

File No. 1:20-CV-00201

Hon.

_____

# COMPLAINT AND JURY DEMAND
_____

## Complaint

Plaintiff Frederick ("Rick") Baker, by and through his attorneys, Pinsky, Smith, Fayette & Kennedy, LLP, states as follows:

### Jurisdiction, Venue, and Parties

1.    This is an action requesting the Court to remedy violations of Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), Mich. Comp. Laws §37.2101, *et seq*.

2.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

3.    Plaintiff Rick Baker is a resident of Prince William County, Virginia.

4.    Defendant Ferris State University ("Ferris") is a mid-sized four-year university and was Plaintiff's employer as defined by Michigan state law. Ferris'

main campus is located in Mecosta County, which is in the Western District of Michigan, Southern Division.

5. The amount of the matter in controversy exceeds the sum or value of $75,000.

6. Venue is proper within this judicial district under 28 U.S.C. § 1391(b). The acts which are the subject of this action occurred in the Western District of Michigan, Southern Division.

## Factual Allegations

7. Plaintiff is a 51-year-old African American male.

8. Plaintiff worked for Ferris as a Software Engineering Lead Instructor for approximately 12 years before he received notice on August 13, 2019 that his contract would not be renewed for the upcoming school year.

9. This notice came despite the fact that Plaintiff had already been listed as faculty to teach fall 2019 courses and despite the fact that Plaintiff's contract had been automatically renewed for every previous year of his 12 years of employment.

10. So automatic was the contract renewal that, in previous years, Plaintiff had begun teaching the fall semester before the final contract was in place or signed.

11. During Plaintiff's career with Ferris, his students enjoyed a 100% job placement rate.

12. Plaintiff likewise received excellent student reviews, including at least one student who wrote to Ferris expressing his extreme dissatisfaction with Plaintiff's termination.

13. While Plaintiff had not had a performance evaluation for over two years, during recent meetings with his supervisor regarding his performance, Mr. Baker's supervisor verbally told Mr. Baker that he was "doing great."

14. Plaintiff's abrupt termination on August 13, 2019 came approximately two weeks after he had a three-hour in-person meeting with Ferris' Director of Equal Opportunity ("EEO"), Kylie Piette, during which he asserted that his supervisor, Glen Okonoski, had engaged in racially discriminatory treatment of him.

15. At this meeting in late July 2019, Plaintiff initiated the process for filing an internal discrimination complaint against Mr. Okonoski.

16. In previous years, Plaintiff spoke with the EEO office about Mr. Okonoski's racially discriminatory actions but had not filed a formal complaint because he feared retaliation.

17. For approximately one year prior to his termination, Plaintiff had also spoken with Ms. Piette about investigating racially discriminatory treatment of him during the online course approval process by the individual who made those decisions, senior online design consultant Tracy Russo.

18. By late July 2019, the situation had become so untenable that Plaintiff decided to move forward with a formal complaint. Approximately two weeks later, Ferris' agents advised Baker his contract would not be renewed.

19. Ferris has attempted to justify its sudden termination of Plaintiff by referring to sham "performance issues" and an October 2018 Performance Improvement Plan ("PIP").

20. Mr. Okonoski issued the PIP in response to Plaintiff's alleged delay in answering an email and other unsupported allegations regarding Plaintiff's "communication" and "collaboration."

21. Other employees who are not African American, however, did not receive PIPs for similar allegations. For example, at least one similarly situated Caucasian employee who frequently did not respond to emails in a timely manner was not placed on a PIP. Beginning in April 2017, Plaintiff sought guidance and confirmation regarding the processing of his online course submissions from Nick Kuiper (a Caucasian employee of Defendant). Mr. Kuiper's responses were often delayed or non-existent, resulting in Plaintiff having to go back to him and follow up on emails he had previously sent. Mr. Kuiper's multiple delays in answering emails did not result in a PIP.

22. Following the PIP, Plaintiff participated in progress meetings with Mr. Okonoski and Dawn Schavey. During these meetings, they repeatedly told Plaintiff that he was "doing great."

23. Plaintiff finally initiated a formal complaint against Mr. Okonoski in July 2019, following six years of Mr. Okonoski's racially discriminatory treatment of him. Mr. Okonoski became Plaintiff's supervisor approximately six years before Plaintiff was terminated. In multiple big and small ways, Mr. Okonoski's conduct undermined and devalued Plaintiff and created a different set of standards and expectations for Plaintiff than for his non-African American counterparts.

24. For example, in his over 12 years as an instructor, Plaintiff was never given the opportunity for tenure. Eighty percent of the instructors in Ferris' School of Digital Media ("SDM") are tenured or on the tenure track. Mr. Baker regularly raised the issue of tenure with Mr. Okonoski at multiple department meetings but received no explanation for why he was repeatedly overlooked. Mr. Baker was the only African American instructor in the SDM.

25. Another example of Mr. Okonoski's discrimination and devaluing behavior occurred when he moved Plaintiff's desk to a less ideal environment within the school. He offered no credible reason for the move and did not ask any non-African American employees to move their desks.

26. Mr. Okonoski also regularly second-guessed Plaintiff's expertise and required Plaintiff to offer additional support or reasoning for his actions in a way he did not require from other employees who are not African American.

27. For example, when Plaintiff requested that a student be allowed to complete an independent study, Mr. Okonoski initially denied the request and only allowed it after the student's parents became involved. Plaintiff worked closely with

5

his students in order to ensure their success and had a demonstrated track record of doing so. For similar student requests originating from other instructors who are not African American, Mr. Okonoski deferred to the expertise and track record of the requesting instructor. For Plaintiff, however, he required further justification and explanation rather than trusting his experience.

28. Similarly, when Plaintiff disagreed with Mr. Okonoski's attempt to make Ferris students take a class with high schoolers at the Kent Career Technical Center – a scheme which had numerous practical and academic flaws and about which multiple students complained – Mr. Okonoski rejected Plaintiff's expertise and perspective on the issue in a way he did not reject the views of non-African American instructors.

29. Further, Mr. Okonoski regularly commented on the fact that he thought Plaintiff was "overpaid," despite the fact that Plaintiff's pay was comparable to other similarly situated instructors. Upon information and belief, Mr. Okonoski did not make this assertion with respect to non-African American employees.

30. In 2017, Mr. Okonoski increased Plaintiff's teaching load without justification and without doing so to other instructors. This change resulted in an effective decrease to Plaintiff's pay.

31. Mr. Okonoski also demonstrated his racial discrimination against Plaintiff in relation to Plaintiff's role in developing online courses.

6

32. Plaintiff proposed developing online courses for classes which he had taught in the past, but Mr. Okonoski allowed another non-African American instructor to develop the courses instead.

33. Plaintiff had previously had several online courses approved, but on that occasion, Mr. Okonoski intervened without explanation or justification and said that Plaintiff could not develop more than two online classes.

34. Mr. Okonoski said Plaintiff was "disingenuous" for asking to develop more courses, because it would increase Plaintiff's pay.

35. Mr. Okonoski then developed a "special" online submission process for Plaintiff to follow. This process was never shared with other employees, resulting in only Plaintiff being required to follow the "special" process.

36. As further evidence of the ongoing discrimination, Plaintiff had not received a performance review or pay increase for two years, including the year prior to his PIP.

37. Throughout his time at Ferris, Plaintiff developed other multiple online classes and received compensation for the classes pursuant to contracts with Ferris.

38. The process for the development of the courses was largely the same. When Plaintiff completed the work, he submitted the course for approval, the course was approved, and Plaintiff received payment. The approval process had been largely a rubber stamp of Plaintiff's work, and Plaintiff's courses had readily been approved in years past.

39. In 2018-2019, Plaintiff developed eight courses, spending approximately 50 - 60 hours on the development of each course, and submitted them for approval.

40. Despite following the same methodology and procedure he had followed before, Ferris refused to approve his courses. Plaintiff questioned Tracy Russo multiple times about the delay in approval and was never given a satisfactory explanation as to why the hold-up in approval for these courses.

41. Upon information and belief, no non-African American instructors had the approval of their online courses withheld in a similar manner.

42. To this date, despite Plaintiff spending approximately 400 hours on course development and completing eight online courses for Ferris, Plaintiff has still not been paid pursuant to his contracts for the development of the following courses: SENG 100: Introduction to Computer Programming, SENG 101: Computer Programming 1, SENG 160: Software Engineering Methodologies, SENG 170: Software Engineering Management, SENG 210: Software Configuration Management, SENG 300: Software Data Structures and Algorithms, SENG 302: Software Quality Assurance, and SENG 420: Software Development Certification.

43. Per the contracts, Plaintiff is owed approximately $40,000 in exchange for the eight online courses he completed and submitted.

### Count I – Violation of ELCRA – Race Discrimination

44. Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

45.     Mr. Okonoski's years of racially discriminatory treatment of Plaintiff, including the improper imposition of a PIP for alleged behavior not similarly disciplined in other employees, is evidence that racial discrimination motivated the adverse employment action taken against Plaintiff.

46.     Defendant's actions related to the termination of Plaintiff from his position as Software Engineering Lead Instructor constitutes unlawful discrimination on the basis of Plaintiff's race.

## CAUSE OF ACTION

47.     Defendant violated the ELCRA, Mich. Comp. Laws § 37.2101, et seq. when it committed the acts of discrimination on the basis of race as aforesaid.

48.     Plaintiff has suffered irreparable harm, in that he has been unlawfully discriminated against as aforesaid and will continue to suffer such harm unless the relief requested herein is granted.

## RELIEF SOUGHT

WHEREFORE, Plaintiff requests that the Court grant him the following relief:

A.      Award Plaintiff damages equal to any salary, wages, bonuses, employment benefits and/or other compensation denied or lost to him by reason of violations of ELCRA by Defendant, plus interest;

B.      Award Plaintiff compensatory damages for mental anguish and emotional distress;

C.      Award Plaintiff punitive damages;

    D.    Award Plaintiff his costs and reasonable attorney fees;

    E.    Award Plaintiff such other relief as may be just and equitable.

### Count II – Violation of ELCRA – Retaliation

49.    Plaintiff relies on the allegations of all prior paragraphs, as if they were restated herein.

50.    Defendant's actions related to the termination of Plaintiff from his position of Software Engineering Lead Instructor approximately two weeks after he made a formal complaint of racial discrimination to the Ferris EEO office constitute unlawful retaliation. Defendant did not renew Plaintiff's contract because Plaintiff made a legitimate, good faith complaint of race discrimination.

### CAUSE OF ACTION

51.    Defendant violated the ELCRA, Mich. Comp. Laws § 37.2101, et seq. when it committed the acts of retaliation as aforesaid.

52.    Plaintiff has suffered irreparable harm in that he has been unlawfully retaliated against as aforesaid and will continue to suffer such harm unless the relief requested herein is granted.

### RELIEF SOUGHT

WHEREFORE, Plaintiff requests that the Court grant him the following relief:

    A.    Award Plaintiff damages equal to any salary, wages, bonuses,

employment benefits and/or other compensation denied or lost to him by reason of violations of ELCRA by Defendant, plus interest;

B.  Award Plaintiff compensatory damages for mental anguish and emotional distress;

C.  Award Plaintiff punitive damages;

D.  Award Plaintiff him costs and reasonable attorney fees;

E.  Award Plaintiff such other relief as may be just and equitable.

                         PINSKY, SMITH, FAYETTE & KENNEDY, LLP
                         Attorneys for Plaintiff

Dated: March 6, 2020       By: /s/ Erin L. Dornbos

                         Sarah Riley Howard
                         Erin L. Dornbos
                         Business Address:
                         146 Monroe Center, N.W., Suite 805
                         Grand Rapids, MI 49503
                         (616) 451-8496

## JURY DEMAND

To the extent that jury trial is available as to any of the issues set forth above, Plaintiff hereby demands same.

> PINSKY, SMITH, FAYETTE & KENNEDY, LLP
> Attorneys for Plaintiff

Dated: March 6, 2020             By:    /s/ Erin L. Dornbos
                                        Sarah Riley Howard
                                        Erin L. Dornbos
                                        Business Address and Telephone Number:
                                        146 Monroe Center St NW, Suite 805
                                        Grand Rapids, MI  49503
                                        (616) 451-8496