UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK BAKER,

    Plaintiff,

v.

    Case No. 1:20-cv-201

    Honorable Hala Y. Jarbou

FERRIS STATE UNIVERSITY,

    Defendant.
_____/

## OPINION

This is a civil rights action. Plaintiff Frederick Baker, who is African American, alleges that his former employer, Defendant Ferris State University (the Board),[1] racially discriminated against him and fired him when he formally complained about his treatment. (First Am. Compl., ECF No. 22.) Baker brings two federal claims and two state claims. Count I alleges race discrimination in violation of Title VII, 42 U.S.C. § 2000e–5, while Count II claims retaliation, also in violation of Title VII, 42 U.S.C. § 2000e–3. Counts III and IV assert similar violations of Michigan's parallel civil rights law, the Elliott-Larsen Civil Rights Act (ELCRA). Before the Court is the Board's motion for judgment on the pleadings. (ECF No. 37.) The motion asks that: (1) the state law claims be dismissed; (2) allegations relating to the failure to pay Baker for courses he developed on behalf of the school be stricken from the complaint; and (3) any claim for recovery

---

[1] For complicated reasons that will be fully explained later, Baker cannot actually sue Ferris State University, and must instead sue its Board of Control. *See infra* Section III.A.1. Thus, the Board is the true Defendant in this action, not the university.

relating to those courses be dismissed. The claims under state law will be dismissed, but the motion will be denied in all other respects.

## I. Background

The following facts are taken from the first amended complaint, which the Court assumes are true for the purposes of the present motion. Baker began working as a software engineering instructor at Ferris State in 2007 or 2008. (*See* First Am. Compl., PageID.150.) Baker held a non-tenure-track position subject to one-year employment contracts. (*Id.*) He received "excellent student reviews" and his "students enjoyed a 100% job placement rate." (*Id.*, PageID.150-151.) Students were not the only ones who were satisfied; though Baker had not received a performance evaluation in the two years prior to his termination, his supervisor told him that he was "'doing great.'" (*Id.*, PageID.151.)

Despite this praise, Baker frequently had problems with that supervisor, Glen Okonoski. Okonoski treated Baker differently compared to his non-African American peers. Eighty percent of the instructors in the School of Digital Media (SDM), where Baker taught, were tenured or on the tenure track. (*Id.*, PageID.153-4.) Baker, the only African American instructor at the SDM, repeatedly asked Okonoski to place him on tenure track, but those requests were always denied. (*Id.*, PageID.154.) Okonoski inexplicably moved Baker's office to an undesirable location in the school but never asked non-African American employees to relocate. (*Id.*) Compared to his non-African American peers, Okonoski frequently second-guessed or discounted Baker's opinions. He also accused Baker of being overpaid and suggested that Baker had disingenuous motives for asking to develop multiple courses, which would boost Baker's income. (*Id.*, PageID.155.)

Course development was a particular issue for Baker. Instructors could develop online courses for the school and receive extra compensation on top of their regular salary. (*Id.*) Baker claims that Okonoski developed a special submission process for his online courses, which was

not imposed on any other instructor. (*Id.*, PageID.156.) Between 2018 and 2019, Baker developed eight courses. (*Id.*) But the courses were not approved, which meant that Baker was not paid. He raised the issue with Tracy Russo, the relevant Ferris State employee, multiple times, but never received a "satisfactory explanation" for the delay in approval. (*Id.*)

Over the years, Baker had complained about Okonoski's conduct to Ferris State's Director of Equal Opportunity, Kylie Piette, but had never made a formal complaint. (*Id.*, PageID.151.) In an October 2018 email to two school deans, Okonoski stated that Baker "had 'suggested, subtly and not, that he is being discriminated against,' and stated that [Baker's] allegations of racial discrimination created 'a difficult dynamic.'" (*Id.*, PageID.152.) A "Performance Improvement Plan" (PIP) was then issued on Baker, apparently for his failure to timely respond to an email, among other purported communications difficulties. (*Id.*) Similar conduct by non-African American instructors had not resulted in a PIP. During subsequent PIP-related progress meetings, participants, including Okonoski, told Baker that he was doing a good job.

Things took a turn for the worse in April 2019, when Baker met with Piette to complain of more racial discrimination. (*Id.*) Baker asked Piette to lodge a formal complaint and initiate a formal investigation at that meeting, though Piette apparently thought Baker made an ambiguous request. (*Id.*, PageID.153.) The two met again in July 2019, where Baker reiterated his desire to trigger a formal investigation into his complaints of racial discrimination. (*Id.*) He was fired two or three weeks later. (*Id.*) During this time, he was still awaiting approval and payment for the eight courses he had developed between 2018-2019. He never received payment.

## II. Standard

The Board brings a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts apply the same

3

standard of review when analyzing a motion for judgment on the pleadings as they do when deciding a motion to dismiss for failure to state a claim. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 295-96 (6th Cir. 2008). When deciding a Rule 12(c) motion brought by the defendant, a court must accept all the complaint's well-pleaded factual allegations as true, draw all reasonable inferences in favor of the plaintiff, and view the complaint in the light most favorable to the plaintiff. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). The motion may be granted only if the defendant is nevertheless entitled to judgment. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). A Rule 12(c) motion may be brought to challenge the legal sufficiency of the complaint, as well as to raise an affirmative defense. *Hindel v. Husted*, 875 F.3d 344, 346-47 (6th Cir. 2017).

### III. Analysis

The Board raises two affirmative defenses in its 12(c) motion: (1) Eleventh Amendment immunity; and (2) failure to exhaust administrative remedies. (Mot. for J. on the Pleadings, PageID.243.) It argues that the state law claims are barred by the Eleventh Amendment, which prevents individuals from suing a state without the state's consent. Thus, it asserts that Counts III and IV must be dismissed.

The Board also contends that Baker did not raise the issue of the alleged nonpayment for his courses in his Equal Employment Opportunity Commission (EEOC) Charge. Because he did not exhaust his remedies relating to his course development in the EEOC Charge, he cannot litigate the matter before this Court. Consequently, the Board argues that all allegations relating to the courses must be struck from the complaint, and Baker should be prohibited from recovering the amount allegedly owed should he succeed on his Title VII claims.

### A. Eleventh Amendment Immunity

#### 1. Who can be sued?

This case raises a surprising question that must be addressed before the Court can consider the immunity issue: does either Ferris State University or its Board of Control have the capacity to sue and be sued? In Michigan, the governing boards of public universities are created by school-specific statutes. Most of them explicitly grant the board the power to sue and be sued. *See, e.g.*, Mich. Comp. Laws § 390.641 (board of Wayne State University may sue or be sued); § 390.4 (same for University of Michigan Board of Regents); § 390.391 (same for board of Lake Superior State University); § 390.555 (same for boards of Central, Eastern, Northern, and Western Michigan Universities). The relevant statutes for Ferris State's Board, by contrast, make no mention of the legal capacity to sue. *See* Mich. Comp. Laws §§ 390.802-803. No statute expressly authorizes Ferris State University to sue or be sued, either.

This issue arose because Baker maintains that he can sue either Ferris State's Board or the university itself, and that he opted to sue the university. The Board countered that *only* the Board may be sued and that, in the context of lawsuits, the Board and the university are one in the same. The Court ordered additional briefing from the parties on this question. After considering the supplemental briefs, relevant statutes, and prior case law, the Court concludes that the Board, and only the Board, has the capacity to sue and be sued.

Because certain statutes expressly confer certain boards with the power to sue and be sued, the Court could infer meaning from the *absence* of such express authorization in the statutes relating to Ferris State's Board. That is, the Court could interpret the absence of such language to mean that the Ferris State Board is not authorized to sue and be sued. But, as the Board points out, it may exercise "[t]he powers customarily exercised by the governing board of a college or university." Mich. Comp. Laws § 390.803. The Board argues that the phrase "customarily

5

exercised" encompasses the power to sue and be sued because prior statutes have granted that power to boards of Michigan public universities, i.e., the power to sue and be sued has become customary for public university boards.  The Court is convinced by this argument, especially in light of *An-Ti Chai v. Mich. Tech. Univ.*, 493 F. Supp. 1137 (W.D. Mich. 1980).

The Board of Michigan Technological University (MTU), like the Board of Ferris State, is not expressly granted the power to sue and be sued.  *See* Mich. Comp. Laws § 390.352; *see also An-Ti Chai*, 493 F. Supp. at 1163-64 ("[N]o mention exists of a general university power to sue or be sued.").  Noting this fact, the court in *An-Ti Chai* found the MTU board capable of suing and being sued, in part because the court found "no state court decisions . . . which intimate a view to the contrary." *An-Ti Chai*, 493 F. Supp. at 1163-64.  The same is true here: the Court is unable to find state court decisions indicating that the Ferris State Board lacks capacity to sue.  Moreover, the Court notes that none of the public university statutes using the phrase "customarily exercised" expressly mentions the power to sue and be sued.  The Court therefore concludes that the power to sue and be sued is a power customarily exercised by boards of Michigan public universities, and the Ferris State Board is therefore authorized to sue or be sued under Mich. Comp. Laws § 390.803.[2]

---

[2] Exactly when the power to sue and be sued became a customary power is not entirely clear to the Court. The relevant University of Michigan statute, expressly authorizing its Board of Regents to sue and be sued, was passed in 1851.  Mich. Comp. Laws § 390.4.  As recently as 1969, the board of Lake Superior State University was expressly conferred capacity to sue.  Mich. Comp. Laws § 390.391(c).  MTU's board was established in 1855 and the relevant statute, last amended in 1977, uses the "customarily exercised" language.  The Court was unable to locate the statute's original 1855 language, which may have included an express authorization to sue and be sued.  The relevant statute for Ferris State was also amended in 1977 (originally passed in 1949), but, as far as the Court can tell, the Michigan Legislature only provides the text of public acts dating back to 1998.  *See* Michigan Legislature, *Legislative Archives*, http://www.legislature.mi.gov/(S(hpbx1u30i5atos3h3amryjqy))/mileg.aspx?page=Archives (last visited Jan. 27, 2021).

Having established that the Ferris State Board has the capacity to sue, the Court now holds that Baker can *only* sue the Board – he cannot sue the university itself.  Michigan Court Rule 2.201(C)(5) states that

> [a]ctions to which the state or a governmental unit (including but not limited to a public, municipal, quasi-municipal, or governmental corporation, an unincorporated board, a public body, or a political subdivision) is a party may be brought by or against the state or governmental unit in its own name, or in the name of an officer authorized to sue or be sued on its behalf.

Mich. Ct. R. 2.201(C)(5).

Baker relies on the above Rule to argue that he may sue Ferris State University rather than the Board.  In response, the Board cites *Heike v. Central Mich. Univ. Bd. of Trs.*, No. 10-11373, 2011 WL 2602004 (E.D. Mich. July 1, 2011).  The court in *Heike*, examining Michigan's statutory framework relating to public universities and their governing boards, held that "under Michigan law, the Board of Trustees *is* the University." *Id.* at *14 (citing *Paquin v. N. Mich. Univ.*, 262 N.W.2d, 673-675 (Mich. Ct. App. 1977) (emphasis in original); *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 777 (6th Cir. 2015) (Wayne State's board treated as true defendant in action against Wayne State University).  The court thus concluded that "any claim against the Board of Trustees is, in effect, a suit against [the university] itself" and that the plaintiff could not treat the university "as if it were a separate legal entity capable of being sued." *Id.*  This Court is persuaded by *Heike*.  For the purposes of lawsuits, Ferris State University and its Board are the same entity.  Therefore, Baker is suing Ferris State's Board and cannot independently sue the university itself.

### 2. State immunity

Now the Court can address the Board's first affirmative defense: that it is entitled to Eleventh Amendment immunity with respect to Baker's state law claims.  The Eleventh Amendment bars a citizen from suing his own state in federal court absent the state's consent.  *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001); *Hanz v. Louisiana*, 134 U.S. 1 (1890).

ELCRA claims may be brought against Michigan, but only in state court, not federal court. Mich. Comp. Laws § 37.2801(2); *see also Hawthorne-Burdine v. Oakland Univ.*, 158 F. Supp.3d 586, 598 (E.D. Mich. 2016) (ELCRA action may not be brought in federal court despite statutory consent to suit in state court). Therefore, Baker's ELCRA claims must be dismissed if the Ferris State Board is entitled to Eleventh Amendment immunity.

"[T]he entity asserting Eleventh Amendment immunity has the burden to show that it is entitled to immunity, i.e., that it is an arm of the state." *Lowe v. Hamilton Cnty. Dep't of Job & Family Servs.*, 610 F.3d 321, 324 (6th Cir. 2010) (brackets and citation omitted). The Sixth Circuit employs a four-factor test to determine whether an entity is an arm of the state:

> (1) the State's potential liability for a judgment against the entity; (2) the language by which state statutes, and state courts refer to the entity and the degree of state control and veto power over the entity's actions; (3) whether state or local officials appoint the board members of the entity; and (4) whether the entity's functions fall within the traditional purview of state or local government.

*Guertin v. State*, 912 F.3d 907, 937 (6th Cir. 2019) (internal quotations omitted).

The state's potential liability for a judgment against the entity is treated as the "most salient" factor, "creating a strong presumption on the issue." *Id.* (internal quotations omitted). Where the state is liable for a potential judgment, a court can only conclude that the entity in question is not an arm of the state if the remaining three factors "heavily outweigh the first factor." *Id.* (internal quotations omitted). Crucially, "'it is the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* particular case, that controls the inquiry.'" *Kreipke*, 807 F.3d at 775 (quoting *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)) (emphasis in original).

In *Kreipke*, the Sixth Circuit held that the board of Wayne State University was an arm of the state because of a Michigan statute providing that "[w]hen any judgment or decree is obtained

8

against any corporate body . . . now or hereafter having charge or control of any state institution, the amount thereof shall be included and collected in the state tax and paid to the person entitled thereto." *Id.* (quoting Mich. Comp. Laws § 600.6095) (internal quotations omitted).  That same statute applies here and demonstrates that Michigan is potentially liable for any judgment against the Board.  Baker's arguments that the state may not be liable because of insurance policies held by Ferris State are unavailing because all that matters is Michigan's *potential* liability for judgments against Ferris State in the abstract.

Baker's additional arguments that Ferris is not an arm of the state because it was originally a private university and may have somewhat more financial and operational independence compared to other Michigan public universities cannot overcome the "most salient" issue that the state is potentially liable for judgments here.  *Cf. Kreipke*, 807 F.3d at 777-81 (remaining three factors in arm-of-state test favored finding that Wayne State was an arm of the state). The Board is an arm of the state and entitled to Eleventh Amendment immunity.

Baker also contends that, even if the Board is entitled to Eleventh Amendment immunity, it has waived that immunity through its participation in this litigation.  Entities can waive their immunity through conduct, principally by attempting to litigate on the merits claims that might be barred by the Eleventh Amendment.  *Nair v. Oakland Cnty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006).  But courts only find waiver in order to prevent egregious hard-nosed litigation tactics by state entities.  For example, the Sixth Circuit held that the State of Tennessee had waived sovereign immunity when it raised that defense for the first time "after an adverse ruling on [a] summary judgment motion."  *Boler v. Earley*, 865 F.3d 391, 410 (6th Cir. 2017) (citing *Akers v. City of Bell*, 498 F. App'x 483, 490 (6th Cir. 2012)).  Tennessee was also denied

9

Eleventh Amendment immunity where it invoked the defense only after it lost a case on the merits. *Ku v. Tennessee*, 322 F.3d 431, 432 (6th Cir. 2003).

The Board's conduct is a far cry from what was seen in *Akers* and *Ku*. While true that the Board has participated in some discovery and did not seek dismissal of the state claims prior to Baker filing the first amended complaint, it has not waived its right to assert Eleventh Amendment immunity. As an initial matter, the original complaint only brought the ELCRA claims. (Compl., ECF No. 1.) The Board's original answer stated that "[s]ome of [Baker's] claims may be barred by government immunity . . . or other immunity provided by law." (Answer, ECF No. 6, PageID.32.) Perhaps the Board could have been more specific about Eleventh Amendment immunity, and perhaps it could have moved to dismiss the case immediately. But "counsel for [Ferris State] was aware . . . that [Baker] fully intended to add Title VII claims when he received the right to sue letter from the EEOC." (Def.'s Reply Br. in Supp. of Mot. for J. on the Pleadings 7, ECF No. 48.) Since an amended complaint was evidently forthcoming, it would make no sense to make a motion to dismiss that would quickly become moot. Moreover, the Board expressly raised the Eleventh Amendment as an affirmative defense in both its answer to the amended complaint (ECF No. 27) and its later amended answer to the amended complaint (ECF No. 33).

It is true that the Board did not raise Eleventh Amendment immunity at an early settlement conference, which occurred after the first amended complaint was filed but about two weeks before it answered the amended complaint. (*Id.*) But it may have hoped to settle the entire case, rendering affirmative defenses unnecessary. Participating in a settlement conference is not akin to litigating the case on the merits. And the Board's participation in discovery for five months should not amount to waiver either. Both parties agree that Baker's Title VII claims are not barred by the Eleventh Amendment; the fate of Counts I and II do not depend on the Board's immunity.

Consequently, the Board would have to litigate the Title VII claims *even if* it succeeded in its Eleventh Amendment argument.

Baker's reliance on *Boler* is misplaced.  The *Boler* court partially based its finding of no waiver on the fact that "the parties had not yet engaged in discovery." *Boler*, 865 F.3d at 411.  But more important was that no final judgments had been issued prior to the defendants' assertion of Eleventh Amendment immunity.  *Id.*  There have been no final judgments in this case and the Court does not discern any brazen and unfairly opportunistic motive in the timing of the Board's assertion of immunity.  Simply put, the Board's degree of participation in this case prior to filing its Rule 12(c) motion does not create waiver.

To summarize: (1) the Ferris State Board has the capacity to sue and be sued; (2) Baker can only sue the Board, not the university itself; (3) the Board is an arm of the state and thus enjoys Eleventh Amendment immunity; and (4) the Board has not waived that immunity through its litigation conduct leading up to the Rule 12(c) motion where it asserts Eleventh Amendment immunity.  The ELCRA claims, Counts III and IV, will be dismissed.

**B. Exhaustion**

The Board argues that Baker should not be permitted to recover any damages from the school's alleged wrongful refusal to pay him for online courses that he developed prior to being terminated.  The Board claims that Baker failed to adequately raise this issue in his EEOC Charge,[3] meaning that he has not administratively exhausted any claims stemming from the unpaid courses.

---

[3] In truth, Baker filed his administrative complaint with the Michigan Department of Civil Rights (MDCR), as is required by 42 U.S.C. § 2000e-5(c).  But the MDCR has a "worksharing" agreement with the EEOC, meaning that the complainant need not file a separate charge with the EEOC to have the matter investigated and be granted the right to bring Title VII claims in court.  *See* 29 C.F.R. § 1601.13.  The parties agree that the relevant document was filed with the MDCR, but since the same document is relevant with respect to Baker's ability to bring Title VII claims and the issues requiring analysis deal with Title VII, the Court will refer to the document as the EEOC Charge for simplicity.

Baker has exhausted his claims and may properly recover damages from the unpaid courses through his Title VII actions.

Before a plaintiff can pursue a Title VII claim in court, he must first exhaust his administrative remedies by filing a charge with the EEOC. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (citing 42 U.S.C. §§ 2000e–5(e)(1), (f)(1)). Though not a jurisdictional matter, courts must refuse to hear Title VII claims that have not been exhausted. *Id.* "The burden of demonstrating exhaustion lies with the plaintiff." *Smith v. HealthSouth Rehab. Ctr. of Memphis, Ltd.*, 234 F. Supp. 2d 812, 814 (W.D. Tenn. 2002) (citing *McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir. 2002)).

But exhaustion is a relatively easy thing to achieve for a Title VII claim. An EEOC charge "must be sufficiently precise to identify the parties, and to describe generally the action or practices complained of." *Younis v. Pinnacle Airlines Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). And "[a]s a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Id.* However, EEOC charges are to be liberally construed and are subject to a forgiving standard.

The "expected scope of investigation test" permits a plaintiff to litigate any matter "where facts related . . . to the charged claim would prompt the EEOC to investigate a different, uncharged claim." *Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (citing *Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 380 (6th Cir. 2002)) (internal quotations omitted). The test's "determinative inquiry . . . is whether [the plaintiff] alleged sufficient facts in his EEOC [charge] to put the EEOC on notice" of claims subsequently brought in court. *Id.* The test is so expansive because the purpose of an EEOC charge is simply "to trigger an investigation, which gives notice to the alleged

wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." *Id.*

In his "Claimant's Initial Support for Charge of Discrimination," Baker makes a single reference to the issue of unpaid courses: "For approximately one year prior to his termination, Mr. Baker had also spoken with Ms. Piette about investigating Dr. Tracy Russo's racially discriminatory treatment of him during the online course approval process." (Claimant's Initial Support for Charge of Discrimination ¶ 2, ECF No. 45-4.) The Board characterizes this as a "passing allegation," but the Court cannot bring itself to believe that the EEOC would not inquire about the online courses during an investigation based on Baker's statement. Baker quite literally states his belief that approval of the courses were withheld for racially discriminatory reasons in his complaint about racial discrimination and retaliation.

The Court finds that the EEOC would have investigated whether the ultimate decision to refuse to pay for the courses was made for discriminatory or retaliatory reasons. This is all well within the expected scope of the EEOC's investigation. Moreover, Baker is not seeking a previously uncharged claim so much as he is seeking damages that the Board believes exceeds the scope of the two Title VII claims here. But that means that the Board takes issue with the complaint itself and not the substance of the EEOC Charge's allegations. Finally, the Board never seems to assert that it was, in fact, unaware of Baker's course-related problems. Failure to exhaust are not grounds to prohibit recovery for the unapproved courses here.

The Board also contends that Baker's request for money for the unapproved courses is a breach of contract claim disguised as damages. Baker certainly could have brought a claim for breach of contract. And the Court understands the Board's enhanced concerns regarding Baker's purported circumnavigating efforts since a breach of contract claim would be barred by the

13

Eleventh Amendment. But the purpose of Title VII is to make a plaintiff "whole" after suffering the consequences of discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419 (1975). If, but for the alleged racial discrimination and retaliation, Baker would have had his courses approved, then payment for those courses will make him whole. The Board's motion is denied in this regard.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Board's motion for judgment on the pleadings with regard to its assertion of Eleventh Amendment immunity but deny the motion in all other respects. Counts III and IV will be dismissed. An order will enter consistent with this opinion.

Dated:   January 28, 2021                         /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  UNITED STATES DISTRICT JUDGE